IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEVE CHRISTENSEN,<br><br>    Plaintiff,<br><br>    v.<br><br>BANNOCK COUNTY SHERIFF'S DEPT., BANNOCK COUNTY, DOUG ARMSTRONG, M.D. HART, TOM FOLZ,<br><br>    Defendants. | Case No. 4:09-CV-189-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is the Defendants' motion for summary judgment (Dkt. 25). The Court heard oral argument on October 18, 2010, and took the motion under advisement. Following further review of the record, and otherwise being fully informed, the Court finds that the motion should be granted as to the unlawful arrest claim but denied as to the malicious prosecution claim. Probable cause supported Plaintiff's arrest on at least one charge, mooting any unlawful arrest claim. However, there is a disputed issue of fact as

to whether the police officers acted with malice and this prevents the officers from relying upon a presumption of prosecutorial independence, which would otherwise preclude their claim of malicious prosecution.

## BACKGROUND

On April 10, 2007, Bannock County Sheriff's Department Detective Doug Armstrong responded to an assistance request from a state probation officer. *Armstrong Aff.* ¶ 3, Dkt. 25-3. The probation officer had discovered a large quantity of firearms while conducting a residential search of a probationer who had tested positive for illegal drugs. *Id.* at ¶ 4-6. The firearms were discovered in Plaintiff Steve Christensen's bedroom, though it was Christensen's son, who was residing with him at the time, who was the sole subject of the probation search. *Id.* at ¶ 7-8.

Detective Armstrong checked Christensen's criminal history and discovered that he had been convicted of lewd and lascivious conduct in 1978. *Id.* at ¶ 9. Detective Armstrong contacted Christensen and informed him that he could not own firearms while his son, a probationer, was living with him, and that he may have committed an independent felony by possessing firearms, given his prior conviction. *Id.* at ¶ 10. Continuing the search, Detective Armstrong found a videotape containing child pornography hidden behind some boxes in Christensen's closet. *Id.* at ¶ 11-12. Detective

Armstrong phoned Bannock County Prosecuting Attorney Cleve Colson for advice on how to proceed. Mr. Colson advised Detective Armstrong to continue the search and that he would make a determination whether to arrest Christensen. *Id*. at ¶ 13-14.

Christensen returned home, at which time Detective Armstrong identified himself and informed Christensen why the search was being conducted. *Id.* at ¶ 15-16. Christensen admitted that he had a previous felony conviction for lewd and lascivious conduct. *Id.* at ¶ 17. Detective Armstrong explained to Christensen that unless a judge restored his rights, Idaho law made it illegal for a convicted felon to own firearms.

Armstrong then asked Christensen if his rights had been restored. *Id.* at ¶ 18. There is a dispute as to how Christensen responded. Detective Armstrong alleges that Christensen indicated that he had previously asked his probation officer to restore his rights, but was unsure if restoration occurred. *Deputy Report*, p.4, Dkt. 34, Ex. A. Christensen claims that he specifically told Detective Armstrong that his rights had been restored, thereby permitting his ownership of firearms. In his deposition, Christensen testified as follows:

> And Armstrong said, you know, you're a convicted felon, you can't own guns. And I said no, I'm not, I can own guns. And I told him why I can own guns.

*Christensen Dep.* 46:21-24, Dkt. 30, Ex. D. Christensen also indicated that he

**MEMORANDUM DECISION AND ORDER - 3**

specifically told Armstrong that his probation officer had told him that his civil rights had been restored. *Christensen Aff.* ¶ 19-20, Dkt. 32-3. Specifically, Christensen testified at his deposition as follows:

> I told him that my senior probation officer who was also a correctional officer at that time, Les Day, said all my rights were restored, go out and make a good life for yourself.

*Christensen Dep*. 47:1-4, Dkt. 30, Ex. D. Finally, Christensen claimed that he told Detective Armstrong that he had voted and sat on juries since being released from prison, and that he had confirmed, via the internet, that he could own firearms before moving to Pocatello from Alaska, at which time he checked baggage with the airline which contained firearms. *Christensen Aff.* ¶ 21-23, Dkt. 32-3. For purposes of this motion, the Court must accept Christensen's version of his response to Detective Armstrong's question.

Detective Armstrong read Christensen his Miranda rights. *Armstrong Aff.* ¶ 19, Dkt. 25-3. Christensen expressed understanding thereof and agreed to continue talking with Detective Armstrong. *Id*. Christensen admitted to possessing and viewing the videotape containing child pornography. *Id*. at ¶ 20-21.

Mr. Colson advised Detective Armstrong that Christensen should not yet be arrested. *Id.* at ¶ 22. Detective Armstrong prepared his report and transmitted it to Mr.

Colson, along with the evidence retrieved from Christensen's home and a report regarding the contents of the videotape prepared by Detective Tom Foltz. *Id.* at ¶ 23; *see also Deputy Report*, pp. 7-9, Dkt. 34, Ex. A. The report indicated that Christensen had been convicted of lewd and lascivious conduct with a minor in the 1970's. *Deputy Report*, p. 2, Dkt. 34, Ex. A. The report also stated that Christensen told the officers that he had asked his probation officer to restore his civil rights, but that he, "wasn't sure if it ever was done." *Id.* at p. 4. Christensen's assertion that his rights had, in fact, been restored was not included in the report.

Mr. Colson reviewed Detective Armstrong's report and the seized evidence and decided that Christensen should be charged with one count of Unlawful Possession of a Firearm and one count of Possession of Sexually Exploitative Material. *Colson Aff.* ¶ 11, Dkt. 25-2. On April 20, 2007, Mr. Colson appeared before Bannock County Magistrate Judge Robert Naftz for a probable cause hearing. *Id.* at ¶ 12. Judge Naftz found probable cause supporting the issuance of a warrant for Christensen's arrest on both counts. *Warrant of Arrest*, Dkt. 35, Ex. A.

On April 24, 2007, Detective Armstrong received notice of the arrest warrant. *Armstrong Aff.* ¶ 24, Dkt. 25-3. Detective Armstrong, along with Detective Foltz, arrested Christensen at his place of business. *Id.* at ¶ 25-26. Bannock County Sheriff's

Deputy M.D. Hart transported Christensen to the Bannock County jail.  *Deputy Report*, p. 9, Dkt. 34, Ex. A.  Christensen was charged with one count of Unlawful Possession of a Firearm and one count of Possession of Sexually Exploitative Material.  *Colson Aff.* ¶ 14, Dkt. 25-2.  Christensen spent thirty days in jail.  *Christensen Aff.* ¶ 35, Dkt. 32-3.

In a written opinion, Idaho Sixth Judicial District Court Judge David Nye granted Christensen's motion to suppress the videotape containing child pornography but denied Christensen's motion to suppress the firearms.  Judge Nye ruled that the firearms' discovery resulted from a lawful protective sweep incident to a consented probation search.  The videotape, however, was suppressed as the fruit of an unlawful search because it was not in plain sight and was in an area of the house not under the sole control of the person subject to the probation search.  The charge of Possession of Sexually Exploitative Material was dismissed.  *Memorandum Decision and Order of October 11, 2007*, Dkt. 32-3, Attachment A.

In a subsequent written opinion, Judge Nye dismissed the remaining charge against Christensen – Unlawful Possession of a Firearm.  The relevant statutes, I.C. § 18-3316 and I.C. § 18-310, prohibit felons convicted after July 1, 1991 from owning firearms.  Christensen pled guilty to lewd and lascivious conduct in 1978, and was released from prison in 1983.  *Memorandum Decision and Order of October 11, 2007*, Dkt. 32-3,

Attachment B.

Christensen filed the Complaint in this matter on April 24, 2009, alleging unlawful arrest, malicious prosecution, and conspiracy, in violation of his constitutional rights, against Detective Armstrong, Detective Foltz, Deputy Hart, Probation Officers Julie Guiberson and Kathy Heyneman, the Bannock County Sheriff's Department, and Bannock County. *Complaint*, Dkt. 1. Defendants Guiberson and Heyneman were dismissed on December 14, 2009. *Docket Entry Order*, Dkt. 21.

## LEGAL STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

## ANALYSIS

1. **Unlawful Arrest**

Christensen was arrested by Defendants Armstrong, Foltz, and Hart pursuant to a facially valid arrest warrant. Police officers are entitled to qualified immunity when they act reasonably and pursuant to a facially valid warrant. *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 929-30 (9th Cir. 2001). Christensen contends that the warrant was not valid due to a lack of probable cause supporting the firearms charge, but the Court need not make this determination. As long as probable cause supported Christensen's arrest on any charge, the arrest was lawful and the inquiry ends. *Devenpeck v. Alford*, 543 U.S. 146, 153-56 (2004). Because Christensen was arrested pursuant to a facially valid arrest warrant containing a properly supported charge[1] of Possession of Sexually Exploitative Material, his unlawful arrest claim fails and summary judgment on that claim must be granted.

**2.      Malicious Prosecution**

The Court now turns to the more difficult issue – Christensen's claim of malicious prosecution. Though one lawful charge supporting an arrest precludes an unlawful arrest

---

[1] Perhaps for tactical reasons, Christensen appears to hang his hat exclusively on the lack of probable cause for the firearms charge, rather than argue that the arrest on the child pornography charge was also invalid because it was based on evidence seized in violation of his Fourth Amendment rights. Because, the validity of the seizure of videotapes and other child pornography has not been raised as an issue, the Court must conclude that there was probable cause to support the issuance of the warrant on that charge.

claim on a companion charge, the same is not true for a claim of malicious prosecution. There is an independent harm to a criminal defendant which may result when an invalid charge is coupled with a valid charge. Bond may be increased, pre-trial release may be denied, and extra attorney fees may be incurred in defense thereof. *See, e.g., Posr v. Doherty*, 944 F.2d 91, 100 (2nd Cir. 1991) ("[A]n officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses.")

In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Malicious prosecution actions are not limited to suits against prosecutors but may be brought against other persons who have wrongfully caused the charges to be filed. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002). *Smiddy v. Varney* established a rebuttable presumption that a prosecutor exercises independent judgment in deciding to file criminal charges, thus immunizing the investigating officers from liability for injuries suffered after the charging decision. 665 F.2d 261 (9th Cir.

1981). This presumption may be rebutted with evidence that the officers "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). "Such evidence must be substantial." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1027 (9th Cir. 2008).

The charges brought against Christensen resulted from a charging decision made by Mr. Colson. Pursuant to *Smiddy*, this creates a rebuttable presumption that Mr. Colson made the charging decision independently. Thus, in order to prevail on his claim of malicious prosecution, Christensen must show that (1) there was no probable cause for the firearms charge, (2) that Armstrong acted with malice with the intent of depriving Christensen of his constitutional rights, and (3) that he knowingly provided misinformation to the prosecutor which caused the initiation of the criminal charges.

Since the Idaho statute did not, on its face, apply to Christensen, it is clear that there was no probable cause for his arrest. The more difficult issues are whether Armstrong acted with malice and whether he knowingly provided misinformation to Colson which resulted in the charges being filed. The Court concludes that Armstrong's submission of his police report to Colson satisfies both requirements.

As indicated above, Armstrong's police report indicated that Christensen indicated

that he had previously asked his probation officer to restore his rights, but was unsure if restoration occurred. *Deputy Report*, p. 4, Dkt. 34, Ex. A. That is in direct conflict with Christensen's deposition testimony and affidavit, which clearly indicate that he told Armstrong that his civil rights had been restored, that he had been so advised unequivocally by his probation officer, and that he had exercised those civil rights in the past by serving on a jury, voting and possessing firearms. The Court finds this is sufficient to raise a material issue of fact as to whether Armstrong acted with malice and whether he knowingly provided misinformation to the prosecutor.

    This is an exceedingly close question. Armstrong can argue forcefully that if he was truly acting with malice, he would not have even mentioned the possibility that Christensen's civil rights had been restored. Moreover, Detective Armstrong turned the matter completely over to Prosecutor Colson, and there is no evidence that he attempted to pressure Colson into bringing charges against Christensen. Christensen also has not shown any direct evidence of animus or of a history between himself and Detective Armstrong. But malice is almost always shown by circumstantial, rather than direct evidence. *See Beck v City of* Upland, 527 F.3d 853 (9th Cir. 2008) (holding that malicious prosecution claim under California law may be proved by circumstantial evidence); *Castro v. County of Nassau*, 2010 WL 3713185 at *10 (E.D.N.Y. September 13, 2010) (holding that for a malicious prosecution claim, "[a]ctual malice typically is

shown by circumstantial evidence . . . ."). While the circumstantial evidence, and the inferences to be derived therefrom, can be easily construed in a way which strongly suggests a lack of malice, the Court cannot engage in such a process in resolving a summary judgment motion.

The Court also cannot say that the misinformation provided by Armstrong was not "actively instrumental in causing the initiation of legal proceedings." *Awabdy,* 368 F.3d at 1067. If the equivocations regarding Christensen's restored rights in Detective Armstrong's report were replaced by Christensen's emphatic statement that he had had his rights restored, the Court cannot find that the warrant would still have been issued.

Arguably, the restoration of one's civil rights is an affirmative defense to a charge of unlawful possession of firearms which requires the asserting party to prove its applicability by presentation of supporting evidence. *See United States v. Green*, 962 F.2d 938, 941 (9th Cir. 1992) ("[A] defendant who relies on an exception to a statute made by a proviso or distinct clause, whether in the same section of the statue or elsewhere, has the burden of establishing and showing that he comes within the exception."). Different states have different procedures for restoration of a felon's civil rights, and restoration may be full or partial. *United States v. Herron*, 45 F.3d 340, 342 (9th Cir. 1995). From this, it may be argued that Armstrong and Colson may not have been obligated to explore Christensen's claim that his civil rights had been restored. But,

what makes this case unique is that Christensen's conviction was 30 years old at the time of his arrest on the firearm charges. That fact was known by the prosecutor and the magistrate. If the officers had also advised the prosecutor and the magistrate that Christensen emphatically claimed that his rights had been restored and that he had routinely exercised those civil rights for many years, the Court cannot say that Colson would have initiated the prosecution or that Judge Naftz would have issued the arrest warrant without first verifying whether Christensen's rights had or had not been restored.[2]

For the foregoing reasons, the Court finds there are disputed issues of material fact which prevent the granting of summary judgment to Detective Armstrong on Christensen's malicious prosecution claim. However, since Plaintiff has not presented evidence that either of the other remaining individual defendants, M. D. Hart and Tom Folz, were involved in the preparation of Armstrong's report and his characterization of Christensen's statement, summary judgment will be granted as to those defendants. *Edgerly v. City and County of San Francisco*, 599 F.3d 946 (9th Cir. 2010) (affirming dismissal of police supervisor in absence of evidence that he was personally involved or

---

[2] Of course, the case would also not have been pursued if Prosecutor Colson and Judge Naftz had recognized that the date of Christensen's prior conviction rendered Idaho's felon in possession statute inapplicable. Both, however, are entitled to absolute judicial and prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (prosecutors are absolutely immune from civil damages suits premised upon conduct "intimately associated with the judicial phase of the criminal process"); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (judges are absolutely immune).

that there was some causal connection between his conduct and the constitutional violations).

### 3. Municipal Liability

Municipalities cannot be held liable under a theory of *respondeat superior* but can be held liable when an alleged constitutional deprivation arises from an impermissible governmental policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 691-94 (1978). A plaintiff may establish the existence of a municipal custom in three ways: (1) by showing a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority "whose edicts or acts may fairly be said to represent official policy" in the area of decision, *Monell*, 436 U.S. at 694; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Christensen has cited no authority that an individual police officer's crafting of his report, or an individual prosecutor's charging decision, may constitute an actionable municipal custom. This is appropriate, because to entertain such claims would open the courts to unending litigation.

# ORDER

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Dkt. 25) is **DENIED** as to Plaintiff's malicious prosecution claim against Defendant Armstrong, but is **GRANTED** as to all other claims and as against all other Defendants.

DATED:  **November 5, 2010**



Honorable B. Lynn Winmill
Chief U. S. District Judge